[Civ. No. 42236. Second Dist., Div. One. June 6, 1974.]

In re the Marriage of GLYNDA JUNE and JAMES MILO PHILLIPS.
JAMES MILO PHILLIPS, Appellant.
GLYNDA JUNE PHILLIPS, Respondent, v.

### COUNSEL

Thomas S. Bunn, Jr., for Appellant.

Gabler, Domke, Berglund, Thatcher & Riddle and William Rehwald for Respondent.

OPINION

**THOMPSON, J.**—The case at bench concerns the effect of the statutory reduction of the age of majority in California from 21 to 18 years of age upon a father's obligation of child support pursuant to an order of court entered prior to the effective date of the statutory change. We conclude that by reason of the particular language of the court order which we here consider, the statutory change reducing the age of majority required that the father's motion to terminate support payments be granted. Accordingly, we reverse a trial court order to the contrary.

Respondent (Wife) obtained a default interlocutory decree of dissolution of her marriage to appellant (Husband) on March 7, 1969. The decree awards custody of the minor children of the parties "James C. Phillips, born June 25, 1954 and John C. Phillips, born December 30, 1956," to Wife. It states in pertinent part: ". . . [Husband] shall pay to [Wife], as and for the support and maintenance of the minor children of the parties, James C. Phillips and John C. Phillips, the amount of $100.00 per child per month . . . commencing April 1, 1969, and continuing thereafter until each of said children shall become self-supporting, emancipated, married, deceased or reaches the age of 21 years or otherwise modified by Court."

Effective January 1, 1972, the California Legislature amended Civil Code section 25 to read: "Minors are all persons under 18 years of age" rather than persons under 21 years of age. The amendment was accomplished by Statutes of 1971, chapter 1748. Section 73 of that statute provides: "In any order or direction of a court entered before the operative date of this act [January 1, 1972], except orders or directions of a court affecting child support, and in the absence of any indication of an intention to the contrary, a reference to the age of majority or the age of 19 years of age, 20 years of age, or 21 years of age shall be deemed to be a reference to 18 years of age. [¶] The use of the words the age of majority, 19 years of age, 20 years of age, or 21 years of age in such an order or direction shall not, in itself, be deemed to indicate a contrary intention. . . . [¶] In any prior order or direction of a court affecting child support entered prior to the effective date of this act, a reference to minority shall be deemed a reference to the age of 21 years."

Section 73 of the 1971 legislation was repealed by Statutes of 1972, chapter 38, legislation carrying an urgency clause and hence effective March 28, 1972. The 1972 legislation provides: "The Legislature intends that any use of or reference to the words 'age of majority,' 'age of minor-

ity,' 'adult,' 'minor,' or words of similar intent in any instrument, order, transfer, or governmental communication whatsoever made in this state: [¶] (a) Before the effective date of Chapter 1748 of the Statutes of 1971, shall make reference to persons older or younger than 21 years of age, and [¶] (b) On or after the effective date of Chapter 1748 of the Statutes of 1971, shall make reference to persons older or younger than 18 years of age. [¶] Nothing contained herein or in Chapter 1748 of the Statutes of 1971 shall prevent the amendment of any court order, will, trust, contract, transfer, or instrument to refer to the new 18-year-old age of majority where such court order, will, trust, contract, transfer, or instrument is: [¶] (1) In existence on the effective date of Chapter 1748 of the Statutes of 1971; and [¶] (2) Subject to amendment by law and where amendment is allowable or not prohibited by the terms thereof; and [¶] (3) Otherwise subject to the laws of this state."

On September 20, 1972, Husband served and filed an order to show cause re modification of child support seeking to terminate his $100 per month obligation to James. The sole basis asserted in support of the modification was that James had reached the age of 18 years on June 25, 1972. The trial court denied the request for modification and this appeal followed.

Chapter 81 of Statutes of 1974, passed by the Legislature and signed by the Governor while this appeal was pending but apparently not yet law (see Gov. Code, §§ 9510.5, 9600), enacts a new section 4704 of the Civil Code which reads: "(a) Any order issued prior to March 4, 1972, providing for support for a child may be amended or modified by the Court having jurisdiction to increase or decrease the amount of such award without terminating such award at the age of majority based on 18 years of age. [¶] (b) This section does not constitute a change in, but, is declaratory of, the existing law." The same session of the Legislature codified as section 25.1 of the Civil Code the language of Statutes of 1972, chapter 38.

■ Husband contends that the trial court erred in denying his motion to terminate support of James who had reached the age of 18 years because: (1) The statutory scheme must be construed to terminate a parent's obligation of child support when the child reaches 18 years of age despite a pre-1970 support order to the contrary; (2) any other construction of the statutes denies equal protection of the law to parents obligated by pre-1970 support orders; and (3) in any event the 1970 legislation emancipated James so to terminate Husband's obligation of support by reason of the court order itself.

Since Husband's argument that his obligation to support James terminated by reason of the terms of the order itself correctly construes the order, we do not reach his other contentions. Assuming that the Legislature was empowered to classify child support awarded prior to the statutory reduction in the age of majority differently from that awarded afterward and that it did so by providing that, absent special circumstances, pre-change awards of child support should continue until the supported child reaches age 21, the language of the particular court order here involved must be considered. That language presents a special circumstance which, when read in conjunction with the statutory reduction in the age of majority, relieved Husband of his obligation to support James when James reached the age of 18 years.

"When a court orders a person to make specified payments for support of a child during the child's minority, or until such child is married or otherwise emancipated, the liability of such person terminates upon the happening of such contingency. . . ." (Civ. Code, § 4700, subd. (b).) The default judgment obtained by Wife obligates Husband to pay child support for each of the two children of the marriage "until each of said children shall become self-supporting, emancipated, married, deceased or reaches the age of 21 years . . . ." A conclusion that the language "reaches the age of 21 years" has not been modified by the statutory scheme reducing the age of majority is not dispositive of Husband's obligation if the word "emancipated" is given a significance independent of attainment of age alone. Recognizing that the issue is an exceedingly close one, we construe the meaning of "emancipated" as used in the decree as encompassing emancipation of a child through change in the law.

Emancipation of a child may arise out of conduct, agreement, or by operation of law, as for example, by the appointment of a guardian, marriage, or the attainment of majority. (Witkin, Summary of Cal. Law (7th ed.) Parent and Child, § 45, and cases there cited.) Since the decree specifically refers to termination of the obligation of support upon a child's becoming self-supporting, his marriage, or his reaching 21 years, its additional provision for termination of support upon "emancipation" must be read broadly if it is to have any meaning at all. Read broadly, the word signifies an intent of the court entering the judgment that the obligation of child support should terminate upon any combination of events which emancipate the child. Here, that combination is a change in the statutory law lowering the age of majority to 18 and the attainment by James of that age.

■ There remains the issue of whether the Legislature in its series of enactments dealing with the effect of the new legislation upon previously existing obligations of child support intended to bring within their sweep obligations expressly terminable upon emancipation as well as those terminable upon attainment of majority. The indicators are that it did not. Civil Code section 4700 which in subdivision (b) provides that a court-ordered obligation of child support terminates upon the happening of specified contingencies, including emancipation, was amended in 1971 and 1972 without change in subdivision (b). Those amendments without change in the specifically applicable language, occurring in the midst of the period when the Legislature was enacting its series of directions of the effect of reduction in the age of majority upon previously ordered child support, must be taken by us as indicative of legislative intent to treat court-ordered child support terminable upon emancipation as well as majority as of a different character than that terminable upon majority alone. Since statutory history supplies an apparent legislative intent, we are precluded from considering its wisdom. True, it may be unsound as a matter of policy to continue child support to age 21 where a court order omits the words "until emancipated" while terminating support at age 18 where the words are included. But the Legislature may well have determined that consideration of careful draftsmanship in the wording of court orders to take into account potential changes in the law is to be given an importance which outweighs considerations of uniformity.

We thus conclude that by reason of the particular wording of the court order imposing Husband's obligation of child support and the operation of subdivision (b) of Civil Code section 4700, Husband's obligation to support James terminated when James reached age 18.

The order of the trial court denying Husband's motion is reversed. Each party to bear his costs on appeal.

Wood, P. J., and Hanson, J., concurred.