[Civ. No. 42504. Second Dist., Div. Four. May 22, 1974.]

FRANCES MAUREEN ATWELL, Plaintiff and Appellant, v. JOHN CORNELIUS ATWELL, Defendant and Respondent.

**COUNSEL**

Young & Young and Walter H. Young for Plaintiff and Appellant.

Goodman, Hirschberg & King, Max A. Goodman and Lance S. Spiegel for Defendant and Respondent.

**OPINION**

**KINGSLEY, J.**—The parties were divorced in 1969 and the husband was ordered to pay child support until further order of the court. In 1971 a minute order increased the amount of child support.

In 1971 Civil Code section 25 was amended by chapter 1748 to read

"Minors are all persons under 18 years of age." Chapter 38 of Statutes 1972, which is still in effect, refers to the effective date of chapter 1748 as March 4, 1972. Chapter 38 reads as follows:

"SECTION 1. Section 73 of Chapter 1748 of the Statutes of 1971 is repealed.

"SEC. 2. Section 75 of Chapter 1748 of the Statutes of 1971 is repealed.

"SEC. 3. Section 76 of Chapter 1748 of the Statutes of 1971 is repealed.

"SEC. 4. The Legislature intends that any use of or reference to the words 'age of majority,' 'age of minority,' 'adult,' 'minor,' or words of similar intent in any instrument, order, transfer, or governmental communication whatsoever made in this state:

"(a) Before the effective date of Chapter 1748 of the Statutes of 1971, shall make reference to persons older or younger than 21 years of age, and

"(b) On or after the effective date of Chapter 1748 of the Statutes of 1971, shall make reference to persons older or younger than 18 years of age.

"Nothing contained herein or in Chapter 1748 of the Statutes of 1971 shall prevent the amendment of any court order, will, trust, contract, transfer, or instrument to refer to the new 18-year-old age of majority where such court order, will, trust, contract, transfer, or instrument is:

"(1) In existence on the effective date of Chapter 1748 of the Statutes of 1971; and

"(2) Subject to amendment by law and where amendment is allowable or not prohibited by the terms thereof; and

"(3) Otherwise subject to the laws of this state.

"SEC. 3 [Urgency statute]

"Approved and filed March 28, 1972."

Section 73, which was repealed, read as follows: "Sec. 73. In any order or direction of a court entered before the operative date of this act, except orders or directions of a court affecting child support, and in the absence of any indication of an intention to the contrary, a reference to the age of majority or the age of 19 years of age, 20 years of age, or 21 years of age shall be deemed to be a reference to 18 years of age.

"The use of the words the age of majority, 19 years of age, 20 years of age, or 21 years of age in such an order or direction shall not, in itself, be deemed to indicate a contrary intention without some further indication of a contrary intention.

"In any order or direction of a court affecting child support entered prior to the effective date of this act, a reference to minority shall be deemed a reference to the age of 21 years.

"Nothing in this section or this act shall prevent the entering of an adoption order under Chapter 2 (commencing with Section 221) of Title 1 of Part 1 of the Civil Code in respect to a person who has attained the age of 18 years, if the application for such order was made before the operative date of this act, and in such case, that chapter shall prevail over this act."

Gregory, a son, became 18 years of age prior to March 4, 1972, the date on which chapter 1748 and chapter 38, which lowered the age of majority, became effective. On November 8, 1972, after the effective date of chapter 38, and after Gregory's 18th birthday, the court modified the prior order of child support for Gregory. The new order read: "The Court modifies the prior order in regard to child support and reduces it to $200.00 a month . . . ."

On January 3, 1973, the husband filed an order to show cause with a request that all child support be terminated on the grounds of change of financial circumstances, and on the grounds that Gregory was no longer a minor.

The trial judge held that the prior November 8, 1972 order, which reduced the child support to $200, automatically had the effect of terminating that child support because the November 8th order took place after the effective date of chapter 1748 of the statutes, which lowered the age of majority and after Gregory had reached that age of majority. The trial court's order reads in part as follows:

"November 8, 1972, the support for Gregory was reduced to $200.00 per month. Gregory was then 19 years of age.

"The order of November 8, 1972 was a 'new' order made after March 28, 1972 the effective date of Chapter 38 of the Statutes of 1972, and terminated when the child attained majority which was 18.

"No further order of this Court is necessary to terminate child support under the November 8, 1972 order. The Court had no jurisdiction to award support for an adult which Gregory had been since the legislation spoke on March 28, 1972. The child support payments terminated when the Court made the 'new' order of November 8, 1972.

"Had the pre March 28, 1972 order remained in effect it would have continued until Gregory attained age 21, however, a modification is a new order and if made after March 28, 1972, terminates at age 18.

"Since no further order is necessary to terminate support, the order having automatically terminated the support, this Court refuses to exercise jurisdiction and will make no further order."

■ The issue before this court is whether an order modifying child support made after the effective date of the statute which changes majority from age 21 to 18, automatically terminates child support, if the child had already reached 18 years of age on the date of that modification, even though, under the original child support order, the court might have required payments until age 21 because the statute in effect at the time of that original support order considered the age of majority as 21 and not 18. Stated another way: Does a child support order awarding support of a child automatically terminate if a modification of that order is made after the child is 18 years of age, where that modification is made after the effective date of the statute reducing the age of majority from age 21 to age 18?

■ Statutes are to be given a reasonable interpretation according to the real, or at least apparent, intention of the lawmaker. (*County of Alameda* v. *Kuchel* (1948) 32 Cal.2d 193 [195 P.2d 17].) ■ A construction that will promote a legislative intention, purpose or policy will override a construction that would defeat it. (*Freedland* v. *Greco* (1955) 45 Cal.2d 462 [289 P.2d 463].) To determine the purpose we consider the words used, the object in view, the context, the history of the legislation and public policy. (See *Estate of Jacobs* (1943) 61 Cal.App.2d 152 [142 P.2d 454].)

■ The first enactment on the matter herein involved expressly excepted orders for child support from the statutory attempt to modify pre-existing orders by substituting the age of 18 years for the age of 21 years. The implication is that the Legislature did not intend that child support orders in effect on March 4, 1972 be affected by the new age-of-majority legislation. Because of attacks on the constitutionality of the attempted blanket change involved in the 1971 statute (cf. *Scott A.* v. *Superior Court* (1972) 27 Cal.App.3d 292 [103 Cal.Rptr. 683]), the Legislature replaced the former section 73 by the new chapter 38. As we read that new chapter, it had, as to pre-existing child support orders, the same effect as section 73 had had—namely they were not affected by the new age-of-majority legislation. The language permitting "amendment" of such orders did no more than to make it clear that traditional law, which for many years has permitted the modification of child support orders was likewise not affected by the new legislation.[1]

---

[1]Whether, under chapter 38, a trial court could expressly modify a pre-1972 child support order solely on the ground that the child had reached the age of 18, without

Thus, our holding is that, although a court order may be amended expressly to refer to the new 18-year-old age of majority, an amendment or modification sought after the date of lowering the age of majority to age 18 does not automatically terminate child support for a child then over 18 years of age.[2] The language of section 4 of chapter 38 of Statutes of 1972 clearly contemplates that there is no automatic determination of pre-March 1972 support orders.[3]

Respondent argues that the Constitution forbids a distinction between fathers who have support orders made before and after March 4, 1972. Since the statute specifically states that a father can seek an amendment by asking the court to refer to the new age of majority, the respondent has no complaint. Respondent's argument that it is irrational and arbitrary to treat fathers who were divorced prior to March 4, 1972, differently from those who are divorced after March 4, 1972, is without merit. The court can examine each case on its own facts and decide whether to invoke the new rule of majority or not, based on rational distinctions. There is no constitutional violation where the distinctions and classifications are reasonable and fair.

Our decision that child support does not automatically terminate upon age 18 is consistent with sound public policy. Pre-March 4, 1972, orders were made with the view that such support orders might continue until age 21. The mother and child may have made certain educational or other plans based on that expectation, and depending on circumstances in each individual case, the court might feel it would be unjust to adopt the new 18-year-old as majority rule.

Respondent argues that in cases involving spousal support, if, on modi-

a showing of any other cause for modification, is not before us and we do not determine that issue.

[2]Appellant seeks to distinguish between modification and amendment, arguing that the judge's order was a modification and not an amendment, therefore not terminating an earlier child support order made prior to the law changing the age of majority. We do not make such a distinction, and we hold that neither a modification nor an amendment automatically terminates child support, although a judge may amend an order to refer to the new age 18 as majority.

[3]Our interpretation of chapter 38, and of the former section 73, is reinforced by the enactment of chapter 81 of the Statutes of 1974, which reads as follows: "Section 4704 is added to the Civil Code, to read:

"(a) Any order issued prior to March 4, 1972, providing for support for a child may be amended or modified by the court having jurisdiction to increase or decrease the amount of such award without terminating such award at the age of majority based on 18 years of age.

"(b) This section does not constitute a change in, but is declaratory of, the existing law."

fication proceedings, support is terminated then the wife cannot thereafter obtain support (*McClure* v. *McClure* (1935) 4 Cal.2d 356 [49 P.2d 584]; *Greer* v. *Greer* (1939) 31 Cal.App.2d 39 [87 P.2d 388]). The attempted analogy is invalid. We do not deal here with an order which expressly terminated *all* support, nor do the rules which apply to support as between ex-spouses apply to support as between parent and child.

Respondent analogizes to *Rosher* v. *Superior Court* (1937) 9 Cal.2d 556 [71 P.2d 918], which involved the 1927 amendment to section 25 of the Civil Code. This amendment increased the age of majority for females from 18 to 21, and the Supreme Court held that change applied to orders made before as well as after the enactment of the amendment raising the age of majority for females. Since the statute in the case before us has language dealing with the issue before us, and since there is legislative history also bearing upon the issue, this language and the legislative history must take precedence over any possible analogy we might draw between the statute at bench and the one in *Rosher*.

Respondent argues that section 4 of chapter 38 does not apply to this case, and that only section 25 of the Civil Code is applicable. Respondent's explanation of why section 4 of chapter 38 does not apply is not persuasive. And as respondent himself admits, he did not make this argument on the trial level.

The order is reversed.

Files, P. J., and Jefferson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 17, 1974.